UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LINDA M. NASH,<br>         Plaintiff,<br><br>-v-<br><br>ARIENS COMPANY, HOME DEPOT U.S.A., INC., AND JOHN DOE, UNKNOWN AGENT OF HOME DEPOT U.S.A., INC.,<br>         Defendants. | No. 1:16-cv-56<br><br>HONORABLE PAUL L. MALONEY |

**OPINION AND ORDER REMANDING CASE TO KENT COUNTY CIRCUIT COURT**

Previously, the Court ordered Defendants to show cause "why this case meets the federal diversity jurisdictional threshold." (ECF No. 7 at PageID.71.) After reviewing Defendants' response (ECF No. 9), the Court determined that they had established, by a (slight) preponderance of evidence, that the amount in controversy exceeds $75,000. In the show-cause order, however, the Court also opened discovery "for the very limited purpose of allowing Plaintiff to ascertain the identity and domicile of 'John Doe,'" and directed Plaintiff to "file an amended complaint with the named party in a timely fashion." (ECF No. 7 at PageID.71.) In response to that order,[1] Plaintiff amended her complaint, substituting a named party, "Reginald Haynes," in the place of "John Doe." Plaintiff alleges that Mr. Haynes "resides in Kent County, Michigan," and the Court has no reason to question the truth of that allegation. (ECF No. 11 at PageID.131–32.)

Thus, the Court ordered Defendants to again show cause why the case should not be remanded for lack of subject-matter jurisdiction. (ECF No. 15.) Both parties filed briefs addressing "fraudulent joinder," since Defendants had raised that issue. (ECF Nos. 16, 17.)

---

[1] Typically, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 14(a)(2). Here, Plaintiff clearly had the Court's leave, and regardless, "[t]he court should freely give leave when justice so requires." *Id.*; (ECF No. 7 at PageID.71).

1

I.  **LEGAL FRAMEWORK**

"Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005). Diversity is first examined at the time of removal. *Id.* at 90. However, "when an amended complaint is filed to include the identity of a previous unidentified defendant, diversity must be determined at the time of the filing of the amended complaint." *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 40 (6th Cir. 2006).

A "district court should . . . dismiss[] the case for lack of subject-matter jurisdiction upon granting [a plaintiff's] motion to amend the complaint to include [a non-diverse party]." *Id.* at 539–40; *see, e.g., Casas Office Mach., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 674 (1st Cir. 1994) ("[F]ederal diversity jurisdiction is defeated so long as, after removal, fictitious defendants are replaced with nondiverse, named defendants.").[2] Indeed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A different line of case law, however, affirms the principle "that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne v. Am. Tobbaco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *see, e.g., Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) ("Fraudulent joinder is 'a judicially created doctrine that provides an exception to the requirement of complete diversity.'").[3]

---

[2] The Court in *Curry* reasoned that 28 U.S.C. § 1447(e) "applies also to the identification of fictitious defendants after removal." *Id.* at 541 (citing *Casas Office Mach., Inc.*, 42 F.3d at 674).
[3] The Sixth Circuit first embraced the doctrine of fraudulent joinder in *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940 (6th Cir. 1994).

2

"The removing party bears the burden of demonstrating fraudulent joinder." *Alexander*, 13 F.3d at 949. "To prove fraudulent joinder, the removing party *must* present sufficient evidence that a plaintiff *could not have established* a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493 (emphasis added). "[I]f there is [even] a *colorable* basis for predicting that a plaintiff may recover against non-diverse defendants, "this Court *must* remand the action to state court." *Id.* (emphasis added).[4] The Court must "look to Michigan law in determining whether [Mr. Haynes] is a proper party, or whether [he] was fraudulently joined." *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999); *cf. Alexander*, 13 F.3d at 948 ("In addressing the sufficiency of pleadings, we must look to state law.").

Finally, the Court "must resolve 'all . . . ambiguities in the controlling . . . state law in favor of the non moving party," *Coyne*, 183 F.3d at 493, and "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Id.* In other words, Defendants face a "heavy burden" to demonstrate that "the non-diverse part[y] was fraudulently joined," *Walker v. Philip Morris USA, Inc.*, 443 Fed. App'x 946, 954 (6th Cir. 2011).

## II. ANALYSIS

"[W]hen an amended complaint is filed to include the identity of a previous unidentified defendant, diversity must be determined at the time of the filing of the amended complaint." *Curry*, 462 F.3d at 540. Plaintiff's amended complaint alleges that Mr. Haynes, a resident of Michigan, did far more than merely deliver the lawn mower (*see, e.g.,* ECF No. 11 at PageID.142–43), and includes counts of negligence, alternative liability, and res ipsa loquitor.[5]

---

[4] "When deciding a motion to remand, including fraudulent joinder allegations, [courts] apply a test . . . more lenient than[] the analysis applicable to a Rule 12(b)(6) motion to dismiss," and "[t]he court may [only] look to material outside the pleadings *for the limited purpose* of determining whether there are 'undisputed facts that negate the claim.'" *Casias*, 695 F.3d at 433 (emphasis added); *cf. infra* note 6.

[5] The Court does not forecast that Plaintiff will ultimately prevail in any way, but the Court must look to *state law* to determine "the sufficiency of pleadings." *Alexander*, 13 F.3d at 948; *cf. infra* note 6.

3

12. The lawn mower was prepared for plaintiff's use and delivered later that day in a white truck driven by defendant Reginald Haynes, upon information and belief, an employee of defendant XPO, and actual and/or apparent and ostensible agent of defendant Home Depot.

13. According to its website, defendant XPO is a global provider of transportation and logistics solutions, including the carrying, installing and assembling of goods, and operating in 1,469 locations in 32 countries.

14. Defendant Reginald Haynes familiarized plaintiff with the lawn mower, advised plaintiff regarding recommended safe usage and maintenance, helped her fill it with gas and observed plaintiff operate the lawn mower.

15. Between August 14, 2014, and September 1, 2014, plaintiff mowed her lawn three times using the new lawn mower and did so without incident.

16. On September 1, 2014 (Labor Day), plaintiff decided to clean out her garage/carport at her home.

17. Plaintiff and her living partner, Donna, moved everything out of the garage and into the driveway, including the new lawn mower.

18. When finished, plaintiff drove the lawn mower back into the garage and parked it against a wall. She then shut it off, but determined a few minutes later that she wanted to move it slightly more.

19. Plaintiff got back on the mower and turned the switch to start it again; the lawn mower immediately exploded into flames.

## COUNT VIII
## NEGLIGENCE (REGINALD HAYNES)

77. Plaintiff incorporates by reference paragraphs 1 through 76 above as if fully stated herein.

78. At all relevant times, and as described above, defendant Reginald Haynes delivered the lawn mower to plaintiff, familiarized plaintiff with the lawn mower, advised plaintiff regarding recommended safe usage and maintenance, helped her fill it with gas, and did so negligently causing/contributing to the defect of the lawn mower.

79. Defendant Reginald Haynes owed a duty to plaintiff, and to the public in general, to exercise ordinary care in his control, delivery of the lawn mower, advising of plaintiff regarding recommended safe usage and maintenance, putting of gas and oil in the lawn mower, and familiarization regarding the lawn mower, for the safety of the lawn mower's end users, including plaintiff.

80. Defendant Reginald Haynes breached those duties, as outlined above, and by creating/contributing to the defective condition of the lawn mower as outlined above.

81. Defendant Reginald Haynes further breached those duties by failing to provide plaintiff with instructions and/or a warning of the dangerous and defective condition of the lawn mower, particularly since he delivered and familiarized plaintiff with the lawn mower and instructed her on safe usage.

82. Defendant Reginald Haynes' breaches created an unreasonable risk of danger that an operator of the lawn mower, including plaintiff, would be at risk of suffering injuries from an explosion.

83. As a result of her injuries sustained from the explosion due to defendant Reginald Haynes' negligence, plaintiff has suffered, and will continue to suffer, loss of earnings, medical, hospital, surgical and nursing care expenses for her care, treatment and management; loss of enjoyment of life; and pain, suffering and anguish, both mental and physical, as well as permanent disfigurement and disability.

WHEREFORE, plaintiff hereby makes claims for all non-economic losses and any economic losses, and for any amount it may be entitled to, plus costs, interest and attorney fees, in whatever amount this Honorable Court deems just and proper.

## COUNT XI
## ALTERNATIVE LIABILITY (ALL DEFENDANTS)

96. Plaintiff incorporates by reference paragraphs 1 through 95 above as if fully stated herein.

97. All defendants outlined above acted tortiously.

98. Plaintiff was harmed by the conduct of one or more defendants.

99. Plaintiff, through no fault of her own, is unable to identify which defendant caused the injury.

100. The burden of proving causation shifts to the defendants.

101. As a result of her injuries sustained from the explosion, plaintiff has suffered, and will continue to suffer, loss of earnings, medical, hospital, surgical and nursing care expenses for her care, treatment and management; loss of enjoyment of life; and pain, suffering and anguish, both mental and physical, as well as permanent disfigurement and disability.

## COUNT XI
## RES IPSA LOQUITUR (ALL DEFENDANTS)

102. Plaintiff incorporates by reference paragraphs 1 through 101 above as if fully stated herein.

103. Defendant Ariens was the manufacturer of the 42-inch "Automatic Tractor" Ariens lawn mower, which is the subject lawn mower of this litigation, at the time of the subject incident. Defendants Home Depot, XPO, and Reginald Haynes assembled, modified, prepared and delivered the subject lawn mower and expressly or implicitly consented to/approved and had knowledge of the lawn mower's operation at the time the incident occurred.

104. Upon information and belief, all the defendants owed plaintiff legal duties and are presumed to have breached those duties pursuant to the doctrine of Res Ipsa Loquitur for the following reasons:

   a. The explosion and fire of the new lawn mower giving rise to this claim is an event that does not ordinarily occur in the absence of someone's negligence;

   b. The explosion and fire originating in the engine/engine area of the lawn mower was caused by an agency or instrumentality within the exclusive control of defendants because at no time did plaintiff ever probe, enter or tamper with the engine/engine area of the lawn mower;

6

> c. The explosion and fire was not due to any voluntary action or contribution on the part of plaintiff; and
>
> d. Evidence of the true explanation of the event is more readily accessible to defendants rather than plaintiff.
>
> 105. As a result of her injuries sustained from the explosion due to defendants' negligence, plaintiff has suffered, and will continue to suffer, loss of earnings, medical, hospital, surgical and nursing care expenses for her care, treatment and management; loss of enjoyment of life; and pain, suffering and anguish, both mental and physical, as well as permanent disfigurement and disability.
>
> WHEREFORE, plaintiff hereby makes claims for all non-economic losses and any economic losses, and for any amount it may be entitled to, plus costs, interest and attorney fees, in whatever amount this Honorable Court deems just and proper.

Defendants argue that Mr. Haynes was fraudulently joined on primarily one basis: he owed no duty to Plaintiff. (*See* ECF No. 17 at PageID.174–79.) The Court thus must analyze the law with respect to "duty" in the context of causes of action sounding in negligence.

Under Michigan law, in order to establish a prima facie case of negligence, the plaintiff must prove four elements: "duty, breach of that duty, causation, and damages." *Fultz v. Union-Commerce Assoc.*, 683 N.W.2d 587, 590 (Mich. 2004). "It is axiomatic that there can be no tort liability unless defendants owed a duty to plaintiff." *Id.* (quoting *Beaty v. Hertzberg & Golden, PC*, 571 N.W.2d 716, 723 (Mich. 1997)).

In general, "the duty that arises when a person actively engages in certain conduct may arise from a statute, a contractual relationship, or by operation of the common law." *Hill v. Sears, Roebuck & Co.*, 822 N.W.2d 190, 196 (Mich. 2012). In determining whether a duty exists, "[t]he most important factor to be considered is the relationship of the parties." *In re Certified Question from Fourteenth Dist. Court of Appeals of Texas*, 740 N.W.2d 206, 211 (Mich. 2007). Although, "as a general rule, 'there is no duty that obligates one person to aid or protect

another,'" *Hill*, 822 N.W.2d at 196 (quoting *Loweke v. Ann Arbor Ceiling & Partition Co., LLC*, 809 N.W.2d 553, 557 (Mich. 2011)), "[t]he ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty." *Id.* (internal citation omitted).

Nonetheless, in the context of whether "a legal duty should be imposed," Michigan courts seem *uniformly* reluctant to dismiss a complaint sounding in negligence for insufficient pleadings, *see Alexander*, 13 F.3d at 948 (or "fail[ing] to state a claim on which relief can be granted," *see* Mich. Ct. R. 2.116(C)(8)), prior to discovery and development of the factual record.[6] *See, e.g., Maiden v. Rozwood*, 597 N.W.2d 817, 823 (Mich. 1999) (quoting *Wade v. Dep't of Corr.*, 483 N.W.2d 26, 28 (Mich. 1992)) ("A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.'"). This makes sense, because the duty "inquiry involves considering, among any other relevant considerations: the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented," which all inherently require factual development and analysis. *See In re Certified Question*, 740 N.W.2d at 211, 222 (internal quotations and citations omitted) (answering a certified question with respect to "duty" with benefit (and utilization) of the factual record).

---

[6] Courts routinely discuss in dicta how the "fraudulent joinder" standard is lower than the standard under Fed. R. Civ. P. 12(b)(6). *See, e.g., Casias*, 695 F.3d at 433. However, federal pleading standards are not necessarily relevant to determine whether, for fraudulent joinder purposes, the pleadings are sufficient to state a "colorable" claim under *state law*. *See Alexander*, 13 F.3d at 948; *Coyne*, 183 F.3d at 493; *cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 578 (2007) (Stevens, J., dissenting) ("[Twenty-six] States[, including Michigan,] and the District of Columbia utilize as their standard for dismissal of a complaint the very language the majority repudiates: whether it appears 'beyond doubt' that 'no set of facts' in support of the claim would entitle the plaintiff to relief."). A variant of the "no set of facts" test is still in effect in Michigan. *See, e.g., Johnson v. Pastoriza*, 818 N.W.2d 279, 288 (Mich. 2012) ("A motion under MCR 2.116(C)(8) may be granted only when the claims alleged 'are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.'").

Indeed, in its most recent case analyzing the duty of "deliverers" and "installers," the Michigan Supreme Court reviewed "de novo [the] circuit court's determination on a motion for summary disposition under MCR 2.116(C)(10)," with a well-developed factual record, "as opposed to (C)(8)." *See Hill*, 822 N.W.2d at 195, n.15; *see also Dressel v. Ameribank*, 664 N.W.2d 151, 154 (Mich. Ct. App. 2003) ("Court[s] appl[y] a de novo standard when reviewing motions . . . under MCR 2.116(C)(10), *which tests the factual support for a claim*.").

In *Hill*, an explosion destroyed plaintiff's home after natural gas released through an uncapped gas line, which ignited when her adult daughter attempted to light a candle after they had both smelled gas in the home throughout the day. Plaintiffs filed suit against the retailers, delivery companies, and installers of plaintiff's electric dryer, which had been installed nearly *four years* earlier and had functioned without incident. The Supreme Court noted:

> Defendant installers entered plaintiffs' home for this limited purpose only once, for a total of 12 minutes. Further, the task was accomplished in a nonnegligent manner at the direction of Marcy's mother, as demonstrated by the fact that the electric dryer functioned without incident up until the time of the explosion. *No record evidence suggests that defendant installers asserted any duty relative to the gas line, let alone any duty to inspect or warn plaintiffs about the gas line*. Given the limited nature of the relationship between defendant installers and plaintiffs, defendant installers were under no obligation to warn of or cap the gas line or undertake any action relative to the gas line, but only had an obligation to use due care when installing the appliances. Because the limited relationship of the parties did not require defendant installers to undertake any action with regard to the gas line, plaintiffs' negligence claim fails as a matter of law. Plaintiffs, however, argue that defendant installers had a duty to take action with regard to the gas line. Plaintiffs' argument is flawed because it wrongly assumes that defendant installers, having undertaken to deliver and install the washer and electric dryer, assumed other responsibilities not associated with the delivery and installation of the washer and dryer. Defendant installers did not act on the gas line. They only delivered and installed the dryer. Thus, having not undertaken by contract or otherwise to act on the gas line, they had no duty to plaintiffs with respect to it.

*Hill*, 822 N.W.2d at 197–98 (emphasis added).

The Court will admit that certain *facts* in *Hill* may eventually support either side in this case, though on balance, distinguishing facts weigh in favor of Plaintiff's *allegations* in this case.

Similar to *Hill*, Plaintiff here alleges that the mower "functioned without incident up until the time of the explosion." *Id.* However, here, the mower allegedly blew up a mere three weeks, and not four years, after Mr. Haynes allegedly "delivered the lawn mower," "familiarized plaintiff with the lawn mower," "advised plaintiff regarding recommended safe usage and maintenance," "helped her fill it with gas," and so forth. (*See* ECF No. 11 at PageID.143.) Further, in *Hill*, plaintiffs sought to hold defendant "installers" liable for failing to inspect and warn plaintiffs about the gas line, when the defendants in that case never took *any* action with regard to the gas line (according to the factual record). Here, Plaintiff alleges that Mr. Haynes took multiple actions in relation to the root of the injury, the mower (in contrast to the gas line in *Hill*). And the facts in *Hill* seemingly left untouched the underlying principle that Michigan law imposes an "obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what *he has undertaken*, for nonperformance of which duty an action lies." *Lindsley v. Burke*, 474 N.W.2d 158, 160 (Mich. 1991) (emphasis added) (quoting *Sweet v. Ringwelski*, 106 N.W.2d 742, 745 (Mich. 1961)); *see also, e.g., Hart v. Ludwig*, 79 N.W.2d 895, 898 (Mich. 1956).

Defendants essentially argue that Plaintiff is not even entitled to get to first base in state court. The Court strongly suspects that upon remand, Plaintiff will be entitled to at least some discovery in order to determine whether "there is a colorable basis . . . that . . . [P]laintiff may recover against [the] non-diverse defendant[]." *See Coyne*, 183 F.3d at 493; *supra* notes 5–6 and accompanying text; *infra* note 9 and accompanying text.

At a minimum, contrary to Defendants' suggestions, it's clear that the Michigan Supreme Court's holding in *Hill* does not state, as a general rule, that any person who delivers or installs a product has no duty. Rather, the determination of duty (and any corresponding breach) should ordinarily be made upon development of the record. *See, e.g., Hill*, 822 N.W.2d at 197 ("The contract did not obligate them to inspect, cap, or in any manner touch the gas line. Having engaged to perform this undertaking, defendant installers had a common-law duty to do so with due care, and *the record reflects that they did so*." (emphasis added)) ("*No record evidence* suggests that defendant installers asserted any duty relative to the gas line, let alone duty to inspect or warn plaintiffs about the gas line." (emphasis added)).

In fact, Defendants do not cite to a single other binding case that held that a plaintiff could not *possibly* establish that a defendant owed a duty *prior to development of the factual record*. *See, e.g., Loweke*, 809 N.W.2d at 561–62 ("Because defendant's motion was brought solely under the mistaken belief that *Fultz* extinguished preexisting common-law duties, we need not and do not preemptively decide whether *this particular plaintiff* was owed a duty of care under the common law." (emphasis added)); *Fultz*, 683 N.W.2d at 593 (reversing judgment of the Court of Appeals, which had affirmed a *jury verdict* for plaintiff).[7][8]

## III. CONCLUSION

The Sixth Circuit has held that to determine whether a claim is "colorable," courts should "address[] the sufficiency of pleadings"; of course, to do so, courts "must look to state law." *Alexander*, 13 F.3d at 948; *see supra* notes 5–6 and accompanying text. "A motion for summary

---

[7] In fact, the Court in *Fultz* noted that plaintiff "*alleges* no duty owed to her independent of the contract." *See id.* (emphasis added). Here, by contrast, Plaintiff *does* "allege[] [a] duty owed to her independent of the contract."

[8] The Court recognizes that "the question of a duty is one of law for the [C]ourt to decide." (*See* ECF No. 17 at PageID.175.) However, Michigan courts uniformly look to the factual record to determine that question of law. *See, e.g., Hill*, The question before the Court is not the "ultimate question," whether a duty in fact exists with respect to Mr. Haynes, but whether the "claims alleged are 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.'" *Maiden*, 597 N.W.2d at 823 (quoting *Wade*, 483 N.W.2d at 28).

11

disposition pursuant to MCR 2.116(C)(8) tests only the legal sufficiency of the pleadings," and the "motion may be granted only when the claims alleged 'are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.'" *See, e.g., Johnson*, 818 N.W.2d at 288 (Mich. 2012); *Beaudrie v. Henderson*, 631 N.W.2d 308, 311 (Mich. 2001) (reversing a grant under R. 2.116(C)(8)); *supra* note 6 and accompanying text; *see also Schuster v. Sallay*, 450 N.W.2d 81, 84 (Mich. Ct. App. 1989) ("Based upon our review of the allegations made in plaintiffs' complaint, we believe that plaintiffs have *alleged the existence of a duty*. Therefore, summary disposition . . . was improper." (emphasis added)).

The Court, in determining whether "Plaintiff has [sufficiently] alleged the existence of a duty," *Schuster*, 450 N.W.2d at 84, "must resolve 'all . . . ambiguities in the controlling . . . state law in favor of the non moving party," *Coyne*, 183 F.3d at 493, and "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Id.* There are clearly nuances and ambiguities in the law that suggest that, however remote, "factual development could *possibly* justify recovery." *See Johnson*, 631 N.W.2d at 311 (emphasis added). The Court cannot assert at this stage, given Michigan's fact-specific approach to the determination of whether a legal duty exists, that there is no "colorable basis for predicting that a plaintiff may recover." *Coyne*, 183 F.3d at 493.[9] Declaring any negligence, alternative liability, or res ipsa loquitor claims[10] *not*

---

[9] Further, each of the cases where the Sixth Circuit has found fraudulent joinder are *easily* distinguishable from the complaint in this case. *See, e.g., Alexander*, 13 F.3d at 942 (noting that in Michigan, "an action in fraud must definitely and issuably set the facts complained of and relied upon for recovery," and finding the complaint reflected "a complete absence of any specific averment of fraud on the party of any defendant," and contained no "representation by [the non-diverse party defendants] made to [plaintiff].")

[10] Since the Court concludes that Plaintiff is entitled to remand on the negligence count alone, it need not delve into her res ipsa loquitur or alternative liability claims. However, the "exclusive custody or control" condition under res ipsa loquitor is probably not as cut and dry as Defendants suggest. *See, e.g., Gadde v. Mich. Consol. Gas Co.*, 139 N.W.2d 722, 726 (Mich. 1966) (citing approvingly of 2 Harper and James Tort, § 19.7, pp.1085–86) ("This consideration has led Harper and James to conclude that the condition of exclusive control would be more accurately phrased as follows: 'the evidence must afford a rational basis for concluding that the cause of the event was probably 'such that the defendant would be responsible for any negligence connected with it.'") ("Suffice it to say that under some circumstances the fact of exclusive control by the defendant may lead to an inference of negligence,

12

"*colorable*" in *state* courts and asserting that Plaintiff "could not . . . [possibly] establish[] a cause of action against Mr. Haynes under state law"—prior to the point when state courts uniformly make those determinations—is premature.[11] *See id.*

Under Michigan law, Mr. Haynes may eventually very well have no duty. Indeed, that outcome may be more likely than not. However, a state court needs to answer that question. *See supra* notes 5–6 and accompanying text. Defendants have not "present[ed] sufficient evidence that . . . [P]laintiff [cannot] . . . establish[] a cause of action against [Mr. Haynes] under state law." *Id.* (emphasis added). That is, at this juncture, "there is . . . [at least] a *colorable* basis for predicting that . . . [P]laintiff *may* recover against [Mr. Haynes]," based on allegations in the complaint. *Id.* (emphasis added). Thus, "this Court *must* remand the action to state court." *Id.* (emphasis added); *see also* 28 U.S.C. § 1447(c); Fed. R. Civ. P. 12(h)(3).

Finally, because filing a notice of removal was technically proper at the time, the Court declines to award Plaintiff costs under 28 U.S.C. § 1447(c). *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is *removable* on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded." (emphasis added)); (ECF No. 15 at PageID.152 ("Defendants established, by a (slight) preponderance of evidence, that the amount in controversy exceeds $75,000.").)[12]

---

but negligence may exist on the part of a defendant without exclusive control depending upon the total circumstances of a given case.").

[11] This is particularly true in this case, where the cause of the explosion will be hotly contested, and Defendants will place the blame on Plaintiff. To the extent that the corporate defendants blame Plaintiff for the explosion, it also stands to reason that they could theoretically have a "colorable" basis to place at least partial blame on the individual who, for example, allegedly "advised plaintiff regarding recommended safe usage and maintenance." (*Compare* ECF No. 11 at PageID.143 *with* ECF No. 18 at PageID.200–01.) A conclusion that Mr. Haynes was "fraudulently joined to defeat federal jurisdiction," *see Alexander*, 13 F.3d at 949, for naming all actors who at least *may* have had a duty, and *may* have played even a small part in bringing about a mysterious explosion, in a case where ample discovery is necessary to determine duty and fault, is not appropriate in this case.

[12] With that said, the Court questions Defendants' resistance to consent to remand (*see* ECF No. 16 at PageID.163–64), even after the Court expressed concerns (*see* ECF No. 15 at PageID.154), and stubborn insistence on accusing Plaintiff of "fraudulently join[ing] [Mr. Haynes] to defeat federal jurisdiction." *See Alexander*, 13 F.3d at 949.

13

## **ORDER**[13]

For the reasons contained in the accompanying opinion, the Court **REMANDS** this case to Kent County Circuit Court. The Clerk of Court should make all appropriate arrangements.

**IT IS SO ORDERED.**

Date:  March 22, 2016           /s/ Paul L. Maloney
                                                           Paul L. Maloney
                                                           United States District Judge

---

[13] "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d).